**L. B. SMITH, INC., Plaintiff,**

v.

**John E. FOLEY, District Director of Internal Revenue, and Schwab Bros. Trucking, Inc., Defendants.**

**Civ. No. 11538.**

United States District Court,
W. D. New York.
Jan. 19, 1972.

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y. (John J. Cooney, Buffalo, N. Y., of counsel), for plaintiff.

H. Kenneth Schroeder, Jr., U. S. Atty. (Andrew F. Oehmann, Jr., Dept. of Justice, Washington, D. C., of counsel), for defendant John E. Foley.

JOHN O. HENDERSON, Chief Judge.

The instant action was commenced by plaintiff to enjoin the sale of and gain repossession of two "Coastal Trailers" previously seized and tagged by the defendant Internal Revenue Service pursuant to Notices of Levy filed with respect to certain tax assessments against the defendant Schwab Bros. Trucking, Inc.

These two "Coastal Trailers" were originally delivered by plaintiff to defendant Schwab Bros. Trucking, Inc. pursuant to a written document, which has since been categorized by all disputing parties herein as a "conditional sales contract," for its use in the construction of the Kensington Expressway Arterial Highway Project in Buffalo, New York.

Subsequent to the initiation of this action, the parties entered into a stipulation providing for the sale of the two "Coastal Trailers" by the District Director of the Internal Revenue Service and the placing of the proceeds realized therefrom in the Registry of this court pending the outcome of the instant action.

After motions for summary judgment had been heard and denied by this court, trial was held, without a jury, resulting in the following findings of fact.

1. On October 9, 1964, a contract was executed by and between the plaintiff and defendant Schwab Bros. Trucking, Inc. providing for the "rental" of two

Coastal Trailers at a "rental rate" of $318.00 per month for a 24-month period, "ownership to pass to customer on receipt of the 24th payment."

Although the term "rental" is used in the contract, the parties now agree that the contract was one of conditional sale for the purchase of the trailers.

2. Delivery of the two trailers was made by plaintiff to defendant Schwab Bros. Trucking, Inc. at the construction site for the Kensington Expressway Highway Project in the City of Buffalo on October 12th and 16th of 1964. Plaintiff also delivered to defendant Schwab Bros. Trucking, Inc., pursuant to lease agreements, certain other items of construction equipment for use on the instant construction job.

3. Plaintiff failed to file a financing statement with respect to these two Coastal Trailers as provided for by section 9–302 of the New York Uniform Commercial Code.

4. Defendant Schwab Bros. Trucking, Inc. was the prime contractor on Contract Nos. FAC 64–6 and FAC 64–19 which involved separate but contiguous portions of the Kensington Expressway Highway Project site.

5. On February 16, 1965, the government filed, with the Clerk of the County of Erie and State of New York, a notice of federal tax lien which included assessments against the defendant Schwab Bros. Trucking, Inc. covering a period from January 15, 1965 to February 16, 1965, in the aggregate amount of $200,672.65 for which an amount in excess of the $5500.00 realized from the sale of the two trailers remains unsatisfied.

6. Subsequent to the filing of the instant lien, defendant Schwab Bros. Trucking, Inc. defaulted on the two construction contracts without having made a single payment to plaintiff for the purchase of the two trailers.

7. On February 15th and 16th of 1965, employees of plaintiff went to the job site supervised by plaintiff's Branch Manager to help locate and repossess certain of its equipment then in the hands of defendant Schwab Bros. Trucking, Inc.

8. Although a great majority of these repossession efforts were conducted on February 15 and 16 of 1965, the evidence indicates otherwise with respect to repossession of the trailers.

9. Plaintiff offered testimony of an alleged conversation between its Branch Manager and State Engineers occurring either on February 15th or 16th of 1965, wherein plaintiff advised that they were repossessing their equipment and would require that records and equipment be removed from the trailers. This testimony also asserted that State Engineers proposed that arrangements be made to leave the trailers with the state picking up a rental obligation.

However, this testimony is negated by the records kept at the job site by State Engineers which reflect the fact the initial efforts to repossess these trailers did not occur until February 17, 1965.

Furthermore, it appears that no actual arrangement was made by the state to make rental payments on these trailers until the end of February and that rental payments were only received for the period of March 1, 1965 to June 11, 1965.

Therefore, plaintiff has failed to meet his burden on this time problem and it appears to this court that the evidence supports defendant's position that initial efforts with respect to repossession of the trailers occurred on February 17, 1965 and thereafter.

10. On March 5, 1965, the District Director of Internal Revenue served a Notice of Levy, pursuant to section 6331 of the Internal Revenue Code of 1954, seizing all property and rights to property in the defendant Schwab Bros. Trucking, Inc.

### Conclusions of Law

Under section 9–305 of the New York Uniform Commercial Code, the actions of the plaintiff herein in seeking to repossess these trailers were insufficient to perfect its security interest. Furthermore, under the facts as found

by this court, constructive or actual possession of these trailers was not accomplished, if at all, until a time subsequent to the filing of the federal tax lien.

■ The filing of this tax lien on February 16, 1965, perfected same against all the property and rights to property held by the delinquent taxpayer. See, section 6321, Title 26, United States Code.

Having failed to perfect his security interest by repossession prior to the perfection of the federal tax lien, plaintiff asserts his priority as a conditional vendor of the two trailers. Thus, the issue now presented to this court is whether the interest of a conditional vendor is superior to a lien for federal taxes against the conditional vendee, assessed and filed subsequent to the execution of the conditional sales contract but prior to the filing of a financing statement with respect to that contract.

As previously noted, under section 6321 of the Internal Revenue Code of 1954, the lien for unpaid taxes arising in favor of the United States attaches to all the property and rights to property, whether real or personal, belonging to such person, and the levy, pursuant to section 6331 of Title 26, United States Code, attaches to those same interests.

■ In view of these sections, the first question to be considered by this court is whether and to what extent the taxpayer-conditional vendee had property and rights to property in the two Coastal Trailers to which the federal tax lien could attach. See, Bethlehem Steel Corporation v. Foley, 399 F.2d 314 (2d Cir. 1968). State law controls the answer to this question and the relevant state law herein is the New York Uniform Commercial Code. See, Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940); United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

Under section 2–401 of the N.Y.U.C.C., the buyer acquires, by identification of goods to the contract, a "special property" in the goods as defined and limited by the Act. Under this same section, although the seller may, by explicit agreement, designate when title shall pass, his reservation of title is treated in effect as a reservation of a security interest.

■ Labels, such as conditional sale, chattel mortgage and the like, are not meaningful terms under the Code and have been replaced by the term "security agreement." See, section 9–105 N.Y.U.C.C., Official Comment (McKinney's, p. 362, 1967). In addition, the concept of "title" is largely immaterial under the Code. See, section 9–201 N.Y.U.C.C. (McKinney's 1964).

■ The "special property" of the buyer in goods identified to the contract is excluded from the definition of "security interest." The incidents of this "special property" in the buyer and the nature of the "special property" interest itself are defined in the provisions of the Code relating to the rights of seller's creditors; on good faith purchase; on the buyer's rights to goods on the seller's insolvency and on the buyer's right to specific performance or replevin. See, Vol. 2, Anderson, Uniform Commercial Code, p. 3 (The Lawyers Cooperative Publishing Company, 2d ed. 1971).

■ Whatever the full nature of this "special property" interest in the buyer, it is of a nature sufficient to permit the attachment of a lien by the buyer's creditor.

Under section 9–301 of the N.Y.U.C.C., a lien creditor is defined as follows:

"A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment. . . ."

■ It appears to this court, that the United States, having filed its lien thereby perfecting same and having

what is in effect a judgment at the time of the making of its tax assessment herein, falls within the above quoted definition of a lien creditor. See, Bull v. United States, 295 U.S. 247, 260, 55 S.Ct. 695, 79 L.Ed. 1421 (1935); Citizens Nat'l Trust & Sav. Bank of Los Angeles v. United States, 135 F.2d 527, 528 (9th Cir. 1943); cf. General Motors Acceptance Corp. v. Stotsky, 60 Misc.2d 451, 303 N.Y.S.2d 463 (Sup.Ct., Suffolk County, 1969).

In determining the nature of the "special property" in the conditional vendee, it is of paramount importance to note the effect the conditional vendee's creditors would have upon the security interest retained by the conditional vendor herein.

■ It is clear, that under New York law and, in particular, section 9–301(1)(b) of the N.Y.U.C.C., a person, who becomes a lien creditor of the conditional vendee without knowledge of the conditional vendor's security interest and prior to the perfection of that security interest, would take priority over the conditional vendor with respect to interest in the two trailers. Cf. City of New York v. Panzirer, 23 A.D.2d 158, 259 N.Y.S.2d 284 (1st Dep't 1965). It follows therefrom, that whatever the full incidents of the "special property" in the conditional vendee, one of those incidents is sufficient to permit the attachment of a lien by his creditor and, under the circumstances noted above, permit that lien to gain priority over the security interest of the conditional vendor.

■ Thus, having determined that the taxpayer-conditional vendee had rights to property sufficient for the attachment of the federal tax lien and that the tax lien attached by virtue of the filing herein, the question of the priority of the competing claims is governed by federal law. See, Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

■ In determining the question of priorities, a choate state-created lien takes priority over a later federal tax lien. United States v. New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). Although it is a matter of federal law, when such a lien has acquired sufficient substance and has become so perfected as to defeat a later-arising or later-filed federal tax lien, state law classification of a lien as specific and perfected is entitled to weight. United States v. Security Trust & Sav. Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950).

■ In the instant action, plaintiff seeks the protection of section 6323 of Title 26, United States Code to obtain the status of a mortgagee. Whether this status is proper or not within the factual framework of this case, plaintiff's lien, which is properly termed a "security interest," must have attained the degree of perfection required of other liens and be choate for purposes of the federal rule. See, United States v. Pioneer American Ins. Co., 374 U.S. 84, 89, 83 S.Ct 1651, 10 L.Ed.2d 770 (1963).

Plaintiff's security interest herein, when viewed under state law, has not attained the degree of perfection required of other liens. On the other hand, the federal tax lien has attained the degree of perfection required of other liens. To permit other perfected liens to defeat plaintiff's security interest, as would be the case under state law, and at the same time permit plaintiff's security interest to defeat the perfected government lien, would result in an anomalous situation and would permit circuity.

■ As noted previously, sections 9–301 and 9–302 of the N.Y.U.C.C. require a conditional vendor in plaintiff's position to file a financing statement before his lien is perfected against third parties. Having failed to file or repossess prior to the perfection of the federal tax lien, plaintiff would be subordinate under the United States v. New Britain rule, cited supra, and having failed to perfect to the extent perfection is required of other liens, plaintiff cannot exert priority or section 6323 special treatment.

Furthermore, as to certain creditors or good faith purchasers, plaintiff's security interest would be inchoate.

█ As noted by the government in its brief, plaintiff's security interest, under the rationale of United States v. Morrison, 247 F.2d 285 (5th Cir. 1957) would be inchoate because it could be defeated by a bona fide purchaser and also, as is noted in the government's brief, inchoate as against a judgment creditor of Schwab Bros. Trucking, Inc. who executed his judgment by levy, obtaining an order directing delivery of the property or the appointment of a receiver pursuant to N.Y. CPLR, section 5234(c).

In any event, having failed to attain that degree of perfection required of other liens and not being choate under the *Pioneer American Ins. Co.* rationale, plaintiff is not entitled to section 6323 treatment and, not being first in time with respect to the government's lien, is subordinate to that lien.

In accordance herewith, let judgment be entered in favor of the defendants.

It is so ordered.